TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-1003 |
| of | : | |
| | : | March 16, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____


THE HONORABLE BRUCE McPHERSON, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

Is a city council member who signed a petition opposing a land use project disqualified from participating in the council proceeding during which the application for a conditional use permit for the project is considered?

CONCLUSION

A city council member who signed a petition opposing a land use project is not disqualified from participating in the council proceeding during which the application for a conditional use permit for the project is considered.

ANALYSIS

We are advised that a city council member signed a petition opposing the development of a museum on a waterfront parcel of land. The petition was thereafter submitted to the council and made a part of the record of the proceedings conducted in connection with the application for a conditional use permit for the project.[1] The question presented for resolution is whether the signing of

_____

[1]It is assumed for purposes of this analysis that the council member has no direct pecuniary interest in the outcome (see *Applebaum v. Board of Directors* (1980) 104 Cal.App.3d 648, 657), has not engaged in an impermissible combination of

1. 94-1003

the petition per se provides a basis for determining that ". . . the probability of actual bias on the part of the . . . decisionmaker is too high to be constitutionally tolerable." (*Withrow v. Larkin* (1975) 421 U.S. 35, 47.) We conclude that the written or verbal expression of preliminary opinion alone does not inexorably preclude a council member from duly considering and relying upon the evidence submitted and arguments made by the parties at the public hearing, or impair the proponent's opportunity to be heard. Accordingly, the council member would not be disqualified from participation at the hearing.

The Fifth and Fourteenth Amendments to the United States Constitution and article I, sections 7 and 15 of the California Constitution guarantee that no one may be deprived of property without due process of law. (See 64 Ops.Cal.Atty.Gen. 526, 530 (1981).) Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source, including state statutes and regulations. (*Perry v. Sindermann* (1972) 408 U.S. 593, 599, 601; *Board of Regents v. Roth* (1972) 408 U.S. 564, 569-570, 577; *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 207.)[2]

The hearing by a city council of an application for a use permit is quasi-judicial in nature. (*City of Fairfield v. Superior Court* (1975) 14 Cal.3d 768, 773, fn. 1; *Johnston v. City of Claremont* (1958) 49 Cal.2d 826, 834.) Generally the right to a hearing by a fair and impartial tribunal is a basic requirement of due process which applies to administrative agencies while acting in a quasi-judicial manner. (*Burrell v. City of Los Angeles* (1989) 209 Cal.App.3d 568, 577; *Trans-Oceanic Oil Corp. v. Santa Barbara* (1948) 85 Cal.App.2d 776, 795-797.)[3]

The present inquiry concerns a matter of general interest to the city in question and more precisely concerns a divisive community controversy to which the inclination of each council member is well known. In such circumstances we must consider both the parties' interest in an impartial tribunal and the multi-faceted duties and prerogatives of individual council members.

The leading case in this area of the law is *City of Fairfield v. Superior Court, supra*, 14 Cal.3d 768, where the Supreme Court examined a city council's denial of an application for a development permit for a shopping center. It was contended that the applicants had not been given a

---

functions as an initial fact finder, investigator, or decision maker (*id.*, at pp. 659-660), is not embroiled in a personal controversy with the proponents (see *Mennig v. City Council* (1978) 86 Cal.App.3d 341, 351), and is not enmeshed in other matters involving a party before the council (*ibid.*).

[2]It is equally clear that there must be a legitimate claim of entitlement to the security of interests that a person has already acquired in specific benefits, and not merely an abstract need or unilateral expectation of it. (*Board of Regents v. Roth, supra*, 408 U.S. at 576-577; *Skelly v. State Personnel Board, supra*, 15 Cal.3d at 206-207; 64 Ops.Cal.Atty.Gen., *supra*, at 530-531.) We need not determine whether in the context presented the mere application for a benefit not previously acquired and for which no claim of entitlement may be enforced, would constitute a constitutionally cognizable property interest.

[3]In *Todd v. City of Visalia* (1967) 254 Cal.App.2d 679, 692, the court observed: "While we speak of councilmen in a situation of this kind as performing quasi-judicial work, it by no means follows that the same standard of ethics that controls judges should also control councilmen." (See also *Burrell v. City of Los Angeles, supra*, 209 Cal.App.3d at 578, 580 [distinction between the due process required in a judicial proceeding and that required in an administrative hearing].)

fair hearing because two of the council members had publicly expressed their opposition to the permit in advance of the hearing. The court rejected the contention, stating:

"In a city of Fairfield's size, the council's decision on the location and construction of a shopping center could significantly influence the nature and direction of future economic growth. The construction of that center will increase both the city's revenue and its expenditures; will affect the value not only of neighboring property, but of alternative shopping center sites and of existing businesses; will give employment but may also aggravate traffic and pollution problems. These topics are matters of concern to the civic-minded people of the community, who will naturally exchange views and opinions concerning the desirability of the shopping center with each other and with their elected representatives.

"A councilman has not only a right but an obligation to discuss issues of vital concern with his constituents and to state his views on matters of public importance. His role in the community is depicted in *Todd* v. *City of Visalia* (1976) 254 Cal.App.2d 679. Rejecting a contention that councilmen who had acquired information outside the hearing room concerning a proposed assessment district were disqualified from voting at a hearing to determine the validity of that district, the court observed that: `A city councilman is elected usually because of his acquaintanceship and popularity. He may not be instructed on many of the technical matters to which he is called upon to pass judgment. He is frequently an extrovert, who circulates widely in the community and talks with businessmen and voters about all sorts of questions that may come before the council. He is a legislator, an administrator, and at times a quasi-judicial officer. In the present instance, it would be strange if the members of the council living and working in Visalia did not have considerable cognizance of what was going on in the city, of the efforts of some people to form the present assessment district and of the municipal needs in this respect, fanciful or actual.' (254 Cal.App.2d at p. 691.)

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"In *Moskow* v. *Boston Redevelopment Authority* (1965) 349 Mass. 553 [210 N.E.2d 699], reviewing a city council's determination to exclude certain property from a redevelopment plan, the Massachusetts Supreme Judicial Court ruled that: `No member of the city council was disqualified because he had expressed an opinion or taken sides on the merits of the Plan including Parcel 8 whether during an election campaign or at any other time. . . . The issue was wholly political in character. . . . It was likewise one of great interest in the community, and the voters were entitled to know the views of the candidates, who had a right, and perhaps a duty, to state their positions.' (210 N.E.2d at p. 707.)" (*Id.*, at pp. 780-781.)

Thus, a city council member's prior knowledge of the factual background which bears upon a council decision or even a member's prehearing expression of opinion on the result does not, as a matter of statute or constitutional law, by itself disqualify the member from acting on a matter before the council. (*Mennig v. City Council, supra*, 86 Cal.App.3d at 350; see also, *Griggs v. Board of*

*Trustees* (1964) 61 Cal.2d 93, 98.) In *Burrell v. City of Los Angeles, supra*, 209 Cal.App.3d at 578, the court quoted from *Hortonville District v. Hortonville Education Association* (1976) 426 U.S. 482, 493, as follows:

> ". . . `[m]ere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not . . . disqualify a decisionmaker. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *FTC v. Cement Institute*, 333 U.S. 683, 700-703 (1948). Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not "capable of judging a particular controversy fairly on the basis of its own circumstances." *United States v. Morgan*, 313 U.S. 409, 421 (1941).'"

While it may be argued that the council member's signing of a petition here suggests not only the expression of an opinion but also the appearance of advocacy, we note that the courts have found no violation of due process when decisionmakers have undertaken both investigative and adjudicative functions in administrative proceedings. (See, e.g., *Griggs v. Board of Trustees, supra*, 61 Cal.2d at 98; *Burrell v. City of Los Angeles, supra*, 209 Cal.App.3d at 581-582; *Applebaum v. Board of Directors, supra*, 104 Cal.App.3d at 658-659; *Boston v. Webb* (4th Cir. 1986) 783 F.2d 1163, 1166; *Brasslett v. Cota* (1st Cir. 1985) 761 F.2d 827, 836-837; *DeSarno v. Department of Commerce* (Fed. Cir. 1985) 761 F.2d 657, 660; *Nevels v. Hanlon* (8th Cir. 1981) 656 F.2d 372, 376-377; *Frumkin v. Board of Trustees* (6th Cir. 1980) 626 F.2d 19, 21-22.)

Accordingly, bias and prejudice may not be implied but must be established by clear averments; a party's unilateral perception of an appearance of bias is not grounds for disqualification. (*Andrews v. Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 792.) As stated in *Burrell v. City of Los Angeles, supra*, 209 Cal.App.3d at 581:

> "Respondents are thus left to argue that the agency officials involved in the decisionmaking process *might* be wedded to their original conclusions, or that the entire process *appears to be* unfair. These speculations are not sufficient to overcome the presumption that public officials will act fairly and conscientiously in discharging their duties."

We cannot say that the expression of opinion alone, whether verbal or in writing in the form of a petition or otherwise, in the absence of any affirmative indication of impropriety such as discriminatory bias, personal animosity, or financial interest, is sufficient to overcome the presumption that a public officer will act properly. It is concluded, therefore, that the city council member who signed the petition in question is not disqualified as a matter of law from subsequent participation in the proceedings regarding the application for a conditional use permit for the project.

\* \* \* \* \*